JOURNAL ENTRY AND OPINION
{¶ 1} The State of Ohio appeals the decision of the trial court to grant Keith Ely's ("Ely") motion to suppress. The state argues that the searching officers did supply reasonably articulate facts giving rise to a suspicion of criminal activity, that the searching officer found the evidence in plain view, and that the evidence was immediately identified as contraband. For the following reasons, we affirm the decision of the trial court to suppress the seized evidence.
 {¶ 2} On October 7, 2004, at approximately 7:40 p.m., Cleveland Police Detectives Thomas Klamert ("Klamert") and Michael Fallon ("Fallon") observed Ely driving at a high rate of speed. The detectives continued to watch Ely and observed him run through a stop sign near the area of Wanda and Bellaire. The detectives followed Ely in their undercover vehicle and when they were approximately 200 feet behind him, activated their lights and sirens. Ely observed the officers, slowed his vehicle, and pulled over.
 {¶ 3} The detectives exited their vehicle and approached Ely with Klamert approaching on the passenger side and Fallon approaching on the driver's side. As they got close to the vehicle, Klamert claimed to observe Ely bending over in between the passenger and driver's seats and notified Fallon. The detectives ordered Ely out of the vehicle and requested that he accompany them to the rear, driver's side of his vehicle. Ely complied with the detectives' requests.
 {¶ 4} After fearing for his and Detective Klamert's safety, Fallon initiated a pat-down search of Ely's outer clothing. The search did not return any contraband. The detectives then began to question Ely about what he was doing in the area at that time of the evening. Detective Klamert claimed that Ely seemed "very nervous" and that things were getting "more suspicious."
 {¶ 5} The detectives planned on issuing Ely a citation for disobeying a posted traffic sign but because they were in an undercover vehicle without a partition, they believed they could not place Ely in the backseat of their vehicle without compromising their safety. The detectives claimed that they were concerned about a possible accident from passing traffic as well as their safety, so before placing him back into his own vehicle to wait for the citation, Klamert investigated Ely's vehicle.
 {¶ 6} While Ely and Fallon were behind the vehicle, Klamert approached the driver's side door, which remained open from Ely's exit, and shined his flashlight into the vehicle. Klamert claimed that when he looked into the vehicle, he observed a metal pipe in the center console of the vehicle. Klamert further claimed that he immediately recognized the metal pipe as a pipe used to smoke crack cocaine and seized the contraband. The detectives then placed Ely under arrest for possession of drugs.
 {¶ 7} On November 18, 2004, the Cuyahoga County Grand Jury indicted Ely with one count of possession of drugs, a fifth degree felony. The defendant pleaded not guilty at his arraignment, and on February 2, 2005, he filed a motion to suppress the evidence seized on October 7, 2004.
 {¶ 8} The trial court commenced an oral hearing on the motion on February 25, 2005. At the hearing, Klamert testified that he immediately became suspicious of Ely when he observed him driving at a high rate of speed in a high drug area at night. Klamert further testified that when Ely bent over in between the passenger and driver's seats, his suspicions were increased. Furthermore, Klamert claimed that Ely's nervous behavior coupled with the all the other factors, led him to believe that criminal activity was afoot. However, upon cross-examination, Klamert could not readily identify where he observed the crack cocaine pipe. Even after defense counsel showed Klamert several pictures of Ely's vehicle, Klamert still could not identify whether he observed the contraband in front of the gear shift, behind the gear shift, or on either side of the gear shift.
 {¶ 9} At the close of the hearing, the trial court ruled from the bench, granting the motion to suppress. The State of Ohio appeals this decision, raising the three assignments of error contained in the appendix to this opinion.
 {¶ 10} The state's first and second assignments of error contain similar issues and, therefore, they will be addressed contemporaneously. The first two assignments of error are as follows:
"The trial court erred by suppressing the evidence properly found in plain view in the defendant-appellee's automobile."
"The trial court erred by finding that Officer Klamert did not ascertain reasonably articulate facts giving rise to a suspicion of criminal activity."
 {¶ 11} On appeal, our standard of review with regard to a motion to suppress is whether the trial court's findings are supported by competent, credible evidence. See State v. Winand
(1996), 116 Ohio App.3d 286; State v. Rosa, Cuyahoga App. No. 85247, 2005-Ohio-3028. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of a witness. State v. Kobi (1997),122 Ohio App.3d 160; Rosa, supra. If the trial court's findings of fact are supported by competent, credible evidence, an appellate court must accept such findings. Kobi, supra. Accepting the facts as found by the trial court as true, the appellate court must then independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. Kobi, supra; Rosa, supra.
 {¶ 12} We initially note that Ely did not dispute the legality of the initial traffic stop, or the legality of ordering him out of the vehicle to issue a citation. This Court agrees with Ely and finds that the detectives were justified in making their initial traffic stop and in ordering Ely from his vehicle for the purposes of issuing a citation. See Pennsylvania v.Mimms (1977), 434 U.S. 106, 98 S.Ct. 330; State v. Robinette
(1997), 80 Ohio St.3d 234.
 {¶ 13} However, Ely did find error with the detectives' continued detention, the search of his vehicle, and the seizure of the contraband. After hearing testimony during the oral hearing, the trial court agreed with Ely and suppressed the contraband. In making its determination, the trial court made the following findings: once the detectives decided to cite Ely for the traffic violation, the justification for the initial traffic stop had ended; the detectives did not establish reasonably articulate facts giving rise to a suspicion that criminal activity was afoot; the detectives exceeded the scope of the initial traffic stop and improperly searched Ely's vehicle; and, even if the detectives did not exceed the scope, they did not meet their burden of proof that the contraband was immediately identifiable.
 {¶ 14} After reviewing the record, we find that the trial court's findings of fact are supported by competent, credible evidence and therefore, we accept them as such. Rosa, supra;Kobi, supra. This court must now determine, without deference to the trial court's conclusion, whether the facts meet the applicable legal standards. Kobi, supra; Rosa, supra.
 {¶ 15} In State v. Robinette, supra, the Ohio Supreme Court enunciated the following legal principle:
"[w]hen a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure."
 {¶ 16} Our initial question becomes whether the purpose behind Klamert's search of Ely's vehicle related to the original traffic stop. We agree with the trial court and find that the purpose for the original traffic stop had ended prior to Klamert's investigation of Ely's vehicle.
 {¶ 17} Ely ran a stop sign, which constituted the original purpose for the traffic stop. At the suppression hearing, Klamert claimed that he feared for his and Fallon's safety after he observed Ely bending in between the passenger and driver's seats, and that is why he peered into Ely's vehicle. However, that concern had been allayed by the pat-down search conducted of Ely's outer clothing, which did not recover any illegal items. Since the search did not reveal contraband, the detectives had no further reason to fear for their safety and no justification for Ely's continued detention. The detectives had already decided to cite Ely, and, therefore, any further detention and investigation of Ely would need to be supported by a suspicion of criminal activity.
 {¶ 18} Moreover, the law is clear, if the trial court's findings of fact are supported by competent, credible evidence, which they are in this case, an appellate court must independently determine whether the facts meet the legal standard. Kobi, supra. Here, the trial court specifically found that once the detectives decided to cite Ely for the traffic violation, the justification for the initial traffic stop had ended. Applying that finding to the holding of Robinette,
supra, it becomes clear that the search of Ely's vehicle did not relate to the traffic stop.
 {¶ 19} Our next question becomes whether Detectives Klamert and Fallon were justified in detaining and searching Ely's vehicle after they decided to issue him a citation. If during the initial detention of Ely, Detectives Klamert and Fallon ascertained reasonably articulate facts giving rise to a suspicion of criminal activity, they could then further detain and implement a more in-depth investigation of Ely. Robinette,
supra.
 {¶ 20} In the present case, Detectives Klamert and Fallon did not have any reasonably articulable facts or individualized suspicion to justify the further detention or search of Ely's vehicle. The facts relied upon by the detectives to support their suspicion that criminal activity was afoot were the following: the detectives observed furtive movements as they approached the vehicle; Ely was not from the area in which he was stopped; and, Ely exhibited nervous behavior. As stated above, the detectives' fears concerning Ely's alleged furtive movements should have been allayed when they executed a pat-down search and did not recover any contraband. Therefore, the only remaining factors that might arguably have caused the detectives' concern were Ely's nervous behavior and that he was not from the area. None of these factors support a finding of reasonable suspicion. Most people display some degree of nervousness when stopped by police and Ely being from a different area does not, in any way, suggest that criminal activity is afoot.
 {¶ 21} Therefore, we agree with the trial court that the detectives' continued investigation and detention of Ely went beyond the parameters warranted by the initial stop and was not supported by a reasonable, articulable suspicion of further criminal activity.
 {¶ 22} The state argues that the plain view exception to the warrant requirement applied in Ely's case to make the warrantless search and seizure of the contraband a legal search. The Fourth
and Fourteenth Amendments to the United States Constitution prohibit warrantless search and seizures unless an established exception applies. Katz v. United States (1967), 403 U.S. 443,466. For the plain view exception to the warrant requirement to apply, the initial intrusion that afforded the authorities the plain view must be lawful; the discovery of the evidence must be inadvertent; and the incriminating nature of the evidence must be immediately apparent. State v. Williams (1978),55 Ohio St.2d 82, 85.
 {¶ 23} However, in this case, the state cannot meet its burden under the first requirement of the test. Because no justification existed for Ely's continued detention and investigation, Klamert's initial intrusion into Ely's vehicle was unwarranted and unlawful.
 {¶ 24} Nor can the state meet its burden under the third requirement of the test. The trial judge described the alleged crack pipe as follows: "It was a perhaps four or five inch long metal tube. There was nothing [that] — might show residue inside, there's nothing to suggest that this was drug paraphernalia. And so even if it were in plain view, the question is whether it is an item that would be immediately identifiable as contraband; and I think that the State has failed to prove that as well." A cursory review of the photograph of the claimed crack pipe confirms the trial judge's description of it as well as his evaluation that it would not meet the plain view test.
 {¶ 25} Therefore, we find that the detectives' ensuing search and seizure of the contraband, though claimed to be pursuant to the plain view exception to the warrant requirement, constituted an illegal search.
 {¶ 26} The trial court did not err by granting Ely's motion to suppress.
 {¶ 27} The state's first and second assignment of error are overruled.
 {¶ 28} Our analysis of the first two assignments of error renders the state's third and final assignment of error moot.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., concurs.
 Calabrese, Jr., J., Dissents (See Separate DissentingOpinion).
 Appendix Assignments of Error
 "I. The trial court erred by suppressing the evidence properlyfound in plain view in the defendant-appellee's automobile.
 II. The trial court erred by finding that Officer Klamert didnot ascertain reasonably articulate facts giving rise to asuspicion of criminal activity.
 III. The trial court erred by finding that there was notestimony that the evidence was immediately identifiable as acrack pipe."