JOURNAL ENTRY AND OPINION
{¶ 1} Arnaldo Valenzuela ("Valenzuela") appeals the trial court's decision denying his motion to suppress. Valenzuela argues that the evidence seized by the Cleveland Police Department should have been suppressed because it resulted from an illegal seizure of his person. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On June 6, 2004, members of the Cleveland Police Department conducted a controlled purchase of drugs in the area of W. 112th Street and Detroit Avenue. Detective Klamert ("Klamert"), working undercover with a confidential reliable informant, observed Shawn Sims ("Sims") standing in front of 1369 W. 112th Street. Sims nodded at Klamert, who in response, stopped his undercover vehicle. Sims approached the vehicle and asked the detective what he wanted. Klamert stated that he wanted a "twenty," street slang for twenty dollars worth of crack cocaine. Sims told Klamert to park and wait while he retrieved the drugs.
 {¶ 3} When Sims walked away, Klamert radioed to nearby detectives of the possible drug transaction and supplied Sims' description. Sims returned and Klamert purchased a rock of crack cocaine from Sims for twenty dollars. Sims walked away from the undercover vehicle and Klamert informed the other detectives that a sale had been completed and to move in and arrest Sims.
 {¶ 4} Detective Shroeder ("Shroeder") approached Sims from behind and noticed that he was walking with Valenzuela. At the same time, Detective Mendoza and Sergeant Dvorak drove up in their undercover vehicle, pulled to the curb in front of Sims and Valenzuela and exited their vehicle.
 {¶ 5} As Shroeder closed in on Sims, Valenzuela turned around, looked at Shroeder and dropped a clear plastic bag containing crack cocaine to the ground. After Shroeder observed Valenzuela drop the crack cocaine to the ground, the detectives ordered him to place his hands in the air and to freeze. Sergeant Dvorak patted down Valenzuela who told the officer to check his waistband. Sergeant Dvorak checked Valenzuela's waistband and recovered a loaded .308 caliber handgun.
 {¶ 6} On July 7, 2004, a Cuyahoga County Grand Jury returned an indictment against Valenzuela for the following offenses: possession of drugs, with a one-year firearm specification; trafficking in drugs, with a one-year firearm specification; and possession of criminal tools. On September 1, 2004, Valenzuela's attorney filed a motion to suppress the drugs and the handgun. On November 4, 2004, the trial court conducted a hearing on the motion and issued its denial of the motion to suppress from the bench.
 {¶ 7} Valenzuela appeals raising a single assignment of error:
"The trial court erred in denying Appellant's suppressionmotion as the evidence seized by the Cleveland Police Departmentwas the fruit of an illegal seizure of Appellant in violation ofArticle One, Section Fourteen of the Ohio Constitution and theFourth and Fourteenth Amendments to the United StatesConstitution."
 {¶ 8} "On appeal, our standard of review with regard to a motion to suppress is whether the trial court's findings are supported by competent, credible evidence." State v. Ely,
Cuyahoga App. No. 86091, 2006-Ohio-459. See, also, State v.Windand (1996), 116 Ohio App.3d 286; State v. Rosa, Cuyahoga App. No. 85247, 2005-Ohio-3028. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of a witness. State v. Kobi (1997),122 Ohio App.3d 160, Rosa, supra. If the trial court's findings of fact are supported by competent, credible evidence, an appellate court must accept such findings. Kobi, supra. Accepting these facts as found by the trial court as true, the appellate court must then independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. Kobi, supra; Rosa, supra.
 {¶ 9} In the instant case, the trial court denied Valenzuela's motion to suppress holding that the seized drugs were not the result of a search because Valenzuela dropped the drugs on the ground. Additionally, the trial court found that the detectives had probable cause to search Valenzuela because of the dropped contraband and that Valenzuela consented to the search when he told Sergeant Dvorak to check his waistband.
 {¶ 10} After reviewing the record, we find that the trial court's findings of fact are supported by competent, credible evidence and therefore, we accept them as such. This court must now determine, without deference to the trial court's conclusion, whether the facts meet the applicable legal standards. Kobi,
supra; Ely, supra.
 {¶ 11} Valenzuela argues that when the Cleveland Police Detectives approached him and Sims, they illegally seized his person and therefore, the drugs and the handgun recovered as a result of this illegal seizure must be suppressed. This argument is without merit.
 {¶ 12} An investigative stop does not violate theFourth Amendment to the United States Constitution if the police have reasonable suspicion that "the person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez
(1981), 449 U.S. 411, 417, 101 S. Ct. 690. Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Alabama v. White (1990),496 U.S. 325, 330, 110 S. Ct. 2412, 110 L. Ed. 2d 301. But it requires something more than an "inchoate and unparticularized suspicion or `hunch.'" Terry v. Ohio (1968), 392 U.S. 1, 27,88 S.Ct. 1868. "The Fourth Amendment requires at least a minimal level of objective justification for making the stop." Illinoisv. Wardlow (2000), 528 U.S. 119, 123, 120 S. Ct. 673.
 {¶ 13} In the present case, the detectives had reasonable suspicion that Valenzuela was involved in criminal activity after Detective Shroeder observed him drop a bag of crack cocaine to the ground. Moreover, detectives observed Valenzuela walking with Sims, who had just sold a rock of crack cocaine to an undercover officer.
 {¶ 14} It is well settled that "the propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." State v. Bobo
(1988), 37 Ohio St.3d 177, at paragraph one of the syllabus; see, also, State v. Jordan, 104 Ohio St.3d 21, 2004-Ohio-6085. Accordingly, the circumstances described above, taken as a whole, created a reasonable suspicion that Valenzuela had engaged in criminal activity and therefore, the detectives' investigatory stop did not violate the Fourth Amendment.
 {¶ 15} Valenzuela's argument that the detectives effectively seized his person when they approached him is without merit. The detectives approached him only because he had been walking with Sims, whom the officers planned to arrest. Additionally, Detective Shroeder, Detective Mendoza and Sergeant Dvorak did not order Valenzuela to stop until after he committed the illegal act. Therefore, the detectives did not seize Valenzuela until after they observed him drop the crack cocaine to the ground.
 {¶ 16} Moreover, this court finds that detectives properly seized Valenzuela's .308 caliber handgun. In Terry, supra, the United States Supreme Court recognized that a police officer may conduct a limited search for weapons in order to protect himself and others within the immediate vicinity. The court held:
"Where a police officer observes unusual conduct which leadshim reasonably to conclude in light of his experience thatcriminal activity may be afoot and that the persons with whom heis dealing may be armed and presently dangerous, where in thecourse of investigating this behavior he identifies himself as apoliceman and makes reasonable inquiries, and where nothing inthe initial stages of the encounter serves to dispel hisreasonable fear for his own or others' safety, he is entitled forthe protection of himself and others in the area to conduct acarefully limited search of the outer clothing of such persons inan attempt to discover weapons which might be used to assaulthim."
Id., 392 U.S. at 30.
 {¶ 17} This court, relying on Terry, has similarly held that "where a police officer, during an investigatory stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." Bobo,
supra, at paragraph two of the syllabus.
 {¶ 18} In the present case, viewing the totality of the circumstances, Sergeant Dvorak had a reasonable objective basis for suspecting that Valenzuela was armed. After being told to freeze and hold up his hands, Valenzuela told Sergeant Dvorak to check his waistband. Considering that Valenzuela warned Sergeant Dvorak of the handgun in his waistband, we conclude that Sergeant Dvorak was justified in conducting a limited pat-down search for weapons.
 {¶ 19} Based on the foregoing, we find that neither the investigatory stop, nor the protective search of Valenzuela violated the Fourth Amendment to the United States Constitution and Section 14, Article I, of the Ohio Constitution. Accordingly, the trial court did not err when it denied the motion to suppress.
 {¶ 20} Valenzuela's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Gallagher, J., concur.