ACCELERATED DOCKET JOURNAL ENTRY AND OPINION
{¶ 1} Geno Isabell ("Isabell") appeals the trial court's decision denying his motion to suppress. Isabell argues that the police lacked reasonable suspicion to stop him and failed to inform him of the Miranda warnings and therefore, any contraband removed from the vehicle should be suppressed. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} This case revolves around the arrest of Isabell on April 17, 2004. Prior to that time, Detective Vowell ("Vowell") received information that a male had been selling drugs from his Blazer. In an attempt to identify this drug dealer, Vowell contacted a confidential informant ("CI"). Though Vowell had not worked directly with the CI prior to this day, the CI had worked with other units, including members of the Cleveland Police Department's Third, Fourth, and Sixth Districts and the Narcotics Unit. Vowell was not personally familiar with the CI but other detectives, who had utilized the CI in the past, vouched for his reliability.
 {¶ 3} On April 17, 2004, the CI told Vowell that the dealer's first name was Geno and that he drove a 1998 or 1999 burgundy Chevy Blazer. The CI also confirmed that this dealer was selling drugs from his vehicle and that he usually kept the drugs in the center overhead console of his vehicle. The CI told Vowell that the suspect was approximately five feet, eleven inches tall with a heavyset build. The CI also provided Vowell with the dealer's telephone number.
 {¶ 4} With the information received from the CI, Vowell dialed the suspect's telephone number and handed the phone to the CI. Vowell wanted the CI to arrange a drug purchase from the suspect. Vowell testified that he clearly overheard the entire conversation, including the suspect's responses to the CI's questions.
 {¶ 5} The CI initiated the conversation and asked for Geno. The suspect responded, "yeah it's me." The CI confirmed the identity by asking again for Geno, to which the suspect said "yeah." The CI and the suspect then agreed upon a purchase of $175 dollars worth of crack cocaine. The suspect told the CI that the drug transaction would take place at the Sunoco gas station at 13009 Buckeye Road in Cleveland. The suspect did not specify a time but stated that he was on his way.
 {¶ 6} Vowell drove himself and the CI to the Sunoco gas station and waited for the suspect. Approximately thirty to forty-five minutes after the CI ordered the crack cocaine, Isabell pulled into the Sunoco gas station driving a burgundy Chevy Blazer. Isabell exited his vehicle, went inside the service station and prepaid for gasoline. Vowell testified that upon first sight, he recognized Isabell from the description the CI provided. Additionally, when the CI saw Isabell, the CI stated "that's Geno."
 {¶ 7} As Isabell pumped his gas, the additional officers who had been called to the scene arrived. The officers immediately blocked Isabell's vehicle with their zone cars and detained Isabell. The officers then asked Isabell if he had any contraband in his vehicle. Isabell stated that he had some marijuana in the overhead compartment. The officers searched the vehicle, recovering marijuana and an unspecified amount of crack cocaine. The officers took Isabell into custody.
 {¶ 8} The Cuyahoga County Grand Jury returned a four-count indictment against Isabell for possession of drugs, two counts of trafficking in drugs, and possession of criminal tools. During pretrial negotiations, Isabell's attorney filed a motion to suppress the contraband seized in violation of his client's constitutional rights. The trial court conducted a hearing during which Vowell and Sergeant Mone testified. The trial court denied Isabell's motion the following day.
 {¶ 9} After obtaining new counsel, Isabell filed a second motion to suppress. In this motion, counsel argued that officers failed to read Isabell his Miranda warnings. However, before the trial court ruled on the motion, Isabell pled guilty to drug trafficking, as charged in count two of the indictment. Shortly thereafter, Isabell moved to withdraw his guilty plea and requested to change his guilty plea to one of no contest. The trial court granted Isabell's request and he pled no contest to all four charges. On September 22, 2005, the trial court found Isabell guilty of all charges and sentenced him to a total prison term of one year.
 {¶ 10} Isabell appealed and his case was placed on the accelerated calendar pursuant to Loc. App. R. 11.1. In his sole assignment of error, Isabell argues that:
"The trial court abused its discretion in denying Mr. Isabell's suppression motion."
 {¶ 11} "On appeal, our standard of review with regard to a motion to suppress is whether the trial court's findings are supported by competent, credible evidence." State v. Ely,
Cuyahoga App. No. 86091, 2006-Ohio-459. See, also, State v.Winand (1996), 116 Ohio App.3d 286; State v. Rosa, Cuyahoga App. No. 85247, 2005-Ohio-3028. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of a witness. State v. Kobi (1997),122 Ohio App.3d 160; Rosa, supra. If the trial court's findings of fact are supported by competent, credible evidence, an appellate court must accept such findings. Kobi, supra. Accepting these facts as found by the trial court as true, the appellate court must then independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. Kobi, supra; Rosa, supra.
 {¶ 12} In the instant case, the trial court denied Isabell's motion to suppress holding that the officers had probable cause to search Isabell's vehicle. The trial court specifically enunciated that it arrived at this conclusion "without, and I stress without considering the defendant's alleged statement to the police concerning the presence and whereabouts of marijuana in the vehicle." The trial court based its decision on the reliability of the CI, the accurate description of Isabell and Isabell's vehicle, that Isabell arrived at the Sunoco station, that the CI knew where Isabell kept his drugs, and that Isabell had indeed stored crack cocaine and marijuana where the CI predicted.
 {¶ 13} After viewing the record, we find that the trial court's findings of fact are supported by competent, credible evidence and therefore, we accept them as such. This court must now determine, without deference to the trial court's conclusion, whether the facts meet the applicable legal standards. Kobi,
supra; Ely, supra.
 {¶ 14} Isabell argues that the police did not have reasonable suspicion to stop him, they illegally seized his person and therefore, the drugs recovered as a result of this illegal seizure must be suppressed. We disagree with this analysis. The stop of Isabell at the Sunoco gas station was not an investigatory stop and frisk, it was an arrest. Accordingly, we agree with the State of Ohio ("State")'s argument that the officers arrested Isabell when they approached him at the gas station.
 {¶ 15} The Ohio Supreme Court has established a four-part test to determine whether a person is under arrest. State v.Darrah (1980), 64 Ohio St.2d 22. An arrest occurs when there is "(1) [a]n intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." (Citations omitted.) Id. at 26.
 {¶ 16} Each of the four prongs is present in this case. The officers approached Isabell with the intent to place him under arrest and acted with real authority. Moreover, when the officers approached, they detained him by blocking his vehicle with police vehicles, and secured Isabell from leaving. The fourth and final factor can only by intimated by the facts herein, as Isabell failed to testify during the hearing. However, Isabell fully complied with the police officers and never attempted to leave. The proper inference to be drawn from such conduct is that Isabell understood the implications of his arrest.
 {¶ 17} Because the actions of the police officers at the gas station amounted to an arrest, we must now determine whether probable cause for the arrest existed.
 {¶ 18} The United States Supreme Court has adopted a "totality of the circumstances" test to determine when an informant's tip provides probable cause for an arrest. Illinoisv. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317. Under this test, an informant's veracity, reliability, and basis of knowledge are all relevant factors. Id. at 233.
"However, these considerations `should be understood simply as closely intertwined issues which may illuminate the common sense practical question of whether probable cause exists * * *.' Probable case `deals with probabilities — the factual and practical nontechnical considerations of everyday life on which reasonable and prudent men act — and is a fluid concept, to be based on the totality of the circumstances, and not reduced to a neat set of legal rules.' Probable cause to arrest exists if reasonably trustworthy facts and circumstances within the officer's knowledge would warrant a prudent person to believe that the suspect had committed or was committing an offense." (Citations omitted.)
State v. Snyder (August 10, 1994), Montgomery App. No. 14089.
 {¶ 19} In the present case, even though the CI had never worked with Vowell before, the CI had proven himself to be reliable to police officers in other police districts in Cleveland as well as in the Narcotics Unit. Morever, the CI proved himself to be reliable in the instant matter. The CI provided Vowell with a name, description, and telephone number of Isabell along with a description of his vehicle and the location of the drugs within the vehicle. The information provided to Vowell by the CI demonstrated inside information — a special familiarity with Isabell's affairs.
 {¶ 20} Moreover, even though Isabell's actions upon his arrival at the Sunoco gas station may seem innocuous, when taken together with the CI's information, they amounted to probable cause for an arrest. The Gates court does not require a suspect's activity, standing alone, to be suggestive of criminal conduct.
"As discussed previously, probable cause requires only a probability of substantial chance of criminal activity, not an actual showing of such activity. By hypotheses, therefore, innocent behavior frequently will provide the basis for a showing of probable cause * * *. In making a determination of probable cause the relevant inquiry is not whether particular conduct is `innocent' or `guilty,' but the degree of suspicion that attaches to particular types of noncriminal activity."
Snyder, supra.
 {¶ 21} We cannot say that the police relied upon noncriminal behavior to arrest Isabell. The CI set up an illegal drug purchase with Isabell, arranged a location for the illegal drug transaction, and Isabell arrived at that location. Isabell's predicted offer to conduct a drug transaction at the Sunoco gas station transformed his subsequent seemingly noncriminal behavior into suspect conduct. Accordingly, the circumstances reveal ample probable cause to support Isabell's warrantless arrest.
 {¶ 22} In this appeal, Isabell's argument is limited to the theory that the stop of his person at the Sunoco gas station was an investigatory stop and that the police did not have the requisite reasonable suspicion to stop him. Isabell does not raise the argument that the subsequent search of his vehicle was illegal. He merely argues that because the stop was illegal, anything seized thereafter should be suppressed. Because we have found that the officers had probable cause to arrest Isabell, we will not address the search of Isabell's vehicle. Nonetheless, we conclude that under the totality of the circumstances, the officers had probable cause to search Isabell's vehicle.
 {¶ 23} However, Isabell does argue that the police officers violated his constitutional rights when they failed to advise him of his Miranda warnings. This argument has no relevance to this appeal. In the transcript of the trial court's ruling on the motion to suppress, the trial court specifically determined that the police officers failed to read the Miranda warnings before questioning Isabell. Morever, in denying the motion to suppress, the trial court stated the following:
"Thus, it is the conclusion of the Court that this conclusion is arrived at without, and I stress without considering the defendant's alleged statement to the police concerning the presence and whereabouts of marijuana in the vehicle."
 {¶ 24} Accordingly, Isabell's statement that he had marijuana in his vehicle was not considered by the trial court when it ruled on the motion to suppress. Therefore, Isabell's argument that the arresting officers did not read him his Miranda warnings has no merit to this appeal.
 {¶ 25} Based on the foregoing, we find that neither the warrantless arrest and search of Isabell's vehicle violated theFourth Amendment to the United States Constitution and Section14, Article I, of the Ohio Constitution. Therefore, the trial court did not err when it denied the motion to suppress.
 {¶ 26} Isabell's single assignment of error is overruled. Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, P.J., And Kenneth A. Rocco, J., concur.