[Cite as *State v. Howard*, 2014-Ohio-4682.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100887**

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## OMAR R. HOWARD

DEFENDANT-APPELLEE

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-575288-A

**BEFORE:** Rocco, P.J., Kilbane, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** October 23, 2014

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Justin P. Rudin
      Amy Venesile
Assistant Prosecuting Attorneys
The Justice Center - 9th Floor
Cleveland, Ohio   44113

**ATTORNEY FOR APPELLEE**

Myron P. Watson
323 W. Lakeside Avenue
Lakeside Place, Suite 420
Cleveland, Ohio 44113

KENNETH A. ROCCO, P.J.:

{¶1} Plaintiff-appellant the state of Ohio appeals from the trial court order that granted a motion to suppress evidence that defendant-appellee Omar R. Howard filed.

{¶2} The state presents two assignments of error. It argues that the trial court's findings of fact were unsupported in the record, and that the actual facts presented at the suppression hearing demonstrated that the police officers who arrested Howard had probable cause to do so.

{¶3} Upon a review of the record, this court agrees with the state's arguments. The trial court's order, consequently, is reversed, and this case is remanded for further proceedings.

{¶4} The following testimony was presented at the hearing on Howard's motion to suppress evidence.

{¶5} On the night of January 10, 2013, Detective Scott Vargo and Sergeant Jeffrey Hirko of the Cuyahoga County Sheriff's Department's "Impact Unit" were "serving warrants" with Detective David Kunker from the Parma Heights Police Department. Kunker knew one of the men they arrested; Kunker had used him previously as someone who provided "street" information. When the informer told the law enforcement officers that he "knew a male that he referred to as Big Man and that he could order up $100 of heroin and have Big Man deliver it to him," the officers decided to pursue the matter.

{¶6} According to Vargo, the informer described "Big Man" as a "black" man who was in his "late 20s, early 30s," "over six feet tall," and "had facial hair." The informer indicated that he drove a blue Buick and was usually punctual. Vargo listened as the informer made a telephone call from Hirko's vehicle. The informer asked the person he called "what was up," the person answered, "All good," and the informer stated that he "was looking for 100." The person the informer called stated that he "would be there in approximately 45 minutes."

{¶7} The informer told the officers that the location at which Big Man would arrive was the "senior living center on North Church" Street. Vargo and Kunker knew that area as one that was the subject of drug complaints. Four to five police units, including one that was used by a "canine officer," proceeded to the senior living center's parking lot. The informer sat in Hirko's car facing the driveway.

{¶8} Within an hour, Vargo observed a blue Buick drive into the parking lot and stop. The informer received a phone call and stated, "That's him," so Hirko notified the other officers that "That's our target," and ordered them to "Move in."

{¶9} The officers surrounded the Buick. They identified themselves and ordered the driver, Omar Howard, to get out. When Howard opened his door, they pulled him out of the car, placed him on the ground, and arrested him.

{¶10} After the arrest, the officers noted that Howard fit the description the informer provided. The officers searched the Buick but found no contraband. Because the canine "alerted," indicating that the car had contained drugs at some point, Vargo

"had a strong feeling" that Howard had concealed drugs on his person. At the conclusion of the booking process at the police station, Howard extracted "a clear plastic bag containing a white residue, powder and a couple small pieces of rock," from his buttocks.

{¶11} Howard subsequently was indicted on one count of possession of cocaine and one count of possession of heroin. He pleaded not guilty to the charges. Howard eventually filed a motion to suppress evidence, arguing that the police lacked probable cause to arrest him. After conducting a hearing on Howard's motion, the trial court granted it.

{¶12} The state appeals from the trial court's decision with the following assignments of error.

> I. The trial court erred in granting Appellant's motion to suppress because the trial court's findings of fact were clearly erroneous and not supported by competent credible evidence.

> II. A proper consideration of the facts confirms that the trial court erred in finding that law enforcement lacked probable cause to arrest Howard based on Howard's offer to sell a controlled substance.

{¶13} The state's assignments of error are interrelated and therefore will be addressed together. The state argues that, in making its legal analysis, the trial court inaccurately recounted the facts presented at the hearing. Based on this argument, the state asserts that the trial court's decision to grant Howard's motion to suppress evidence is flawed and must be reversed. This court agrees.

**{¶14}** As the state points out, this court's standard of review with regard to a motion to suppress is whether the trial court's findings are supported by competent, credible evidence. *State v. Ely*, 8th Dist. Cuyahoga No. 86091, 2006-Ohio-459, ¶ 11; *State v. Rosa*, 8th Dist. Cuyahoga No. 85247, 2005-Ohio-3028, ¶ 16. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of a witness. *State v. Kobi*, 122 Ohio App.3d 160, 167, 701 N.E.2d 420 (6th Dist.1997).

**{¶15}** If the trial court's findings of fact are supported by competent, credible evidence, an appellate court must accept such findings. *Id.* at 168. Accepting these facts as found by the trial court as true, the appellate court must then independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. *Id.* In this case, the trial court wrongly determined that the facts were insufficient to meet the applicable legal standard.

**{¶16}** There are three permissible bases for conducting a warrantless arrest: (1) the arrestee has committed an offense in a police officer's presence (*Gerstein v. Pugh*, 420 U.S. 103, 113, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)); (2) the officer has probable cause to believe that the arrestee has committed a felony and the arrest occurs in a public place (*United States v. Watson*, 423 U.S. 411, 418, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)); and (3) the officer makes a warrantless entry into a home upon probable cause for an arrest *and* the circumstances are "exigent" (*Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)).

{¶17} In this case, the state claimed that Howard was arrested on the second basis, i.e., that the officers had probable cause to believe that Howard committed a felony and his arrest occurred in a public place. The state asserted that the facts demonstrated that Howard made an "offer to sell" heroin.

{¶18} "Probable cause" to arrest exists when an officer is aware of facts that would lead a reasonable person to believe that the suspect has committed or is committing a crime, however minor. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The issue in this case, therefore, is whether the facts and circumstances within the arresting officers' knowledge were sufficient to cause a prudent person to believe that Howard had committed, or was committing, the offense of drug trafficking, thus obviating the need for an arrest warrant. An important factor in evaluating the reliability of an informant's tip is the degree to which it predicts future behavior of third parties. *Alabama v. White*, 496 U.S. 325, 332, 110 L.Ed.2d 301, 110 S.Ct. 2412 (1990) (when significant aspects of the informer's predictions are verified, there is reason for the officer to believe not only that the informer is honest, but also that he is well informed.).

{¶19} The state asserts that the facts of this case are similar to those presented in *State v. Isabell*, 8th Dist. Cuyahoga No. 87113, 2006-Ohio-3350. This court finds the state's assertion to have merit.

{¶20} In *Isabell*, the informer told the detective the drug dealer's first name and telephone number, that he drove a 1998 or 1999 burgundy Chevy Blazer, that he sold drugs from his vehicle, kept the drugs in the center overhead console, and was five feet,

eleven inches tall with a heavyset build. The informer made a call to Isabell on the detective's phone and arranged to buy $175 worth of crack cocaine at a gas station that Isabell designated. When Isabell arrived in that vehicle at that gas station, he exited, whereupon the informer identified him for the detective. Based on these facts, this court upheld the trial court's denial of Isabell's motion to suppress evidence.

{¶21} Similarly, in this case, Kunker knew the informer and had used him previously to obtain "street" information. The informer told the law enforcement officers that he "knew a male that he referred to as Big Man and that he could order up $100 of heroin and have Big Man deliver it to him." Hirko recalled that the informer asked for "$100 worth of heroin." Howard drove into the parking lot chosen by the informer at approximately the time that the informer stated he would arrive, and Howard was driving a car of the exact color, make and model that the informer predicted. Upon his exit from the car, Howard matched the informer's description of the seller.

{¶22} Upon a review of the record, therefore, this court concludes that, although the trial court's findings of fact were supported by competent, credible evidence, the trial court's determination that the officers did not have probable cause to arrest Howard was incorrect. This court noted in pertinent part as follows in S*tate v. Roubideaux*, 8th Dist. Cuyahoga No. 92948, 2010-Ohio-73, ¶ 35-38:

> * * * [R]easonable suspicion is dependent upon both the content of
>
> the information provided, and its degree of reliability. *Alabama v. White*
>
> (1990), 496 U.S. 325, 332, 110 S. Ct. 2412, 110 L. Ed. 2d 301 at 330-31.

Quantity of information available and the quality of that information both are examined under a *totality of the circumstances* approach. *Id.* at 330.

In this case, [Det.] Monnolly had information * * * that described Roubideaux's car, his license plate number, his customary delivery times to the house, his habits in making his deliveries, and the presence of drugs in the house after his visits. Under these circumstances, Monnolly acted prudently in seeking to acquire additional information * * * .

* * *

[B]ased upon his own firsthand observations in conjunction with the information provided by the CS who saw Roubideaux's actions, Monnolly had *probable cause* to believe Roubideaux's car contained contraband. * * * Indeed, if Monnolly did not act, any evidence of criminal activity would be lost because Roubideaux could no longer be detained * * * .

(Emphasis added.)

{¶23} Similarly, on nearly identical facts as those presented in this case, the court in *State v. Huggins*, 6th Dist. Lucas No. L-02-1289, 2003-Ohio-3843 declared:

In *State v. Andrews* (1991), 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271, the Ohio Supreme Court stated:

"* * * [A totality of the surrounding circumstances is] to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold. (Citations omitted.) A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement. (Citation omitted.)"

In this case, the detective had probable cause to believe that contraband was in appellant's vehicle based upon the informant's information and the detective's own personal knowledge. The detective testified that he had been assigned to the Metro Drug Task Force for 16 years and had made "hundreds" of arrests during that time period; * * * that the informant indicated appellant was his only drug source; that pursuant to the detective's direction, the informant placed a telephone call to appellant and ordered four and one-half ounces of crack cocaine to be delivered to the informant that evening; that the informant indicated appellant would be delivering the cocaine to the informant's residence within one hour of the call; that the informant indicated appellant would be driving one of two different vehicles; that appellant arrived within one-half hour of the call and was driving a vehicle matching the description given to the detective by the informant; [and] that the informant identified appellant when he arrived * * * . The totality of these circumstances clearly established probable cause for the warrantless search of appellant's vehicle.

{¶24} The trial court, therefore, incorrectly concluded based upon the evidence presented that the police lacked probable cause to arrest Howard. The state's assignments of error, accordingly, are sustained.

{¶25} The trial court's order is reversed. This case is remanded to the trial court for further proceedings according to law.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for further proceedings.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS
(SEE ATTACHED OPINION)

MARY EILEEN KILBANE, J., DISSENTS:

**{¶26}** I respectfully dissent. I would affirm the court's judgment granting Howard's motion to suppress.

**{¶27}** In deciding a motion to suppress, this court's standard of review is "whether the trial court's findings are supported by competent credible evidence." *Ely*, 8th Dist. Cuyahoga No. 86091, 2006-Ohio-459, at ¶ 11. Moreover, we "must defer to the trial court's factual findings, if those are supported by the record." *See, e.g., State v. Wilson*, 74 Ohio St.3d 381, 390, 1996-Ohio-103, 659 N.E.2d 292.

**{¶28}** In this matter, the trial court set forth its rationale for suppressing the evidence in a detailed explanation that spans nine pages of the record. The trial court reviewed all of the evidence presented, and noted that the confidential informant was someone who had just been arrested and was hoping to receive favorable consideration for his information. The officers listened in as the informant telephoned "Big Man" to purchase heroin, and they obtained a description of this individual, who was to arrive in 45 minutes, as well as a description of the vehicle. Howard arrived in a vehicle matching the description. The court stated:

In less than an hour, a blue Buick pulled in and in the car was a black male. In approximately a minute, Sergeant Hirko, H-I-R-K-O, ID'ed this person as their target, Big Man. Police officers moved in. They surrounded the car, ordered the occupant out. When they pulled the individual out, he was told he was under arrest. The individual, a black male more than 6 feet tall, about 250 pounds, with some facial hair, was placed in handcuffs in detention and according to Deputy Vargo, he was told that he was under arrest due to a call to purchase $100 of narcotics. There was additional testimony in this matter, and through that testimony was elicited that the words, I'm looking for a hundred, can mean many things. No narcotics were mentioned. * * * Other significant facts, when the takedown signal was given by Sergeant Hirko, the sheriff's detectives had already decided to arrest the defendant and Deputy Vargo admitted through his testimony that what they were told by the informant was not confirmed until after the defendant had been arrested. In other words, they couldn't see the size of the person, they couldn't definitively say he had facial hair, they didn't know his name, they didn't even — they weren't able to verify all the things until after he had been arrested.

{¶29} The trial court concluded, and I agree, that the officers' "intent was to go and arrest [Howard] as soon as they verified that that was the blue Buick." When the car arrived at the designated area, the informant states "that's the car." The police then

swept in and arrested Howard. The informant had only identified the car at this point in time and there had been no exchange between the informant and Howard. The trial court applauded the police work, but found that the police had acted too soon. The officers' testimony acknowledged that the information provided by the informant was not verified until after Howard was arrested.

{¶30} The trial court concluded, and I agree, that there "was reasonable and articulable suspicion, but there was not probable cause. So the arrest was illegal and the evidence that was subsequently seized when [Howard] was in custody [should] be suppressed."