DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. The jury found Percy Abernathy, defendant below and appellant herein, guilty of: (1) first-degree felony drug possession in violation of R.C. 2925.11(A); (2) first-degree felony drug trafficking in violation of R.C. 2925.03(A)(2); (3) fifth-degree felony drug possession in violation of R.C. 2925.11(A); and (4) possession *Page 2 
of criminal tools in violation of R.C. 2923.24(A).
 {¶ 2} Appellant raises the following assignments of error for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE OBTAINED AS THE RESULT OF AN UNREASONABLE, WARRANTLESS SEARCH AND SEIZURE."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT IMPOSED SEPARATE SENTENCES WITH REGARD TO COUNTS OF POSSESSION AND TRANSPORTATION-TRAFFICKING OF THE SAME QUANTITY OF NARCOTICS, AS THOSE COUNTS ARE ALLIED OFFENSES OF SIMILAR IMPORT AND MUST MERGE FOR SENTENCING PURPOSES."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN SENTENCING MR. ABERNATHY TO SERVE CONSECUTIVE PRISON TERMS."
 {¶ 3} On August 27, 2006, a confidential informant contacted Portsmouth Police Department Narcotics Investigator Todd Bryant to advise him that a man named "P" planned to be in town to deliver drugs. The informant agreed with the police to arrange a drug transaction with "P" and placed an unmonitored phone call to "P." "P" requested that the informant meet him in Rosemount. The informant discussed the meeting location with law enforcement officers, and the officers requested that he call "P" back and request that they meet in the Kroger parking lot on Gay Street. The informant then called "P" and asked that he meet him at the Kroger parking lot.
 {¶ 4} Approximately ten to fifteen minutes after the last phone call, the man the informant identified to officers as "P" entered the Kroger parking lot and circled the lot about three times as if he were "looking for someone." The officers then decided to *Page 3 
stop "P's" vehicle. "P," later identified as appellant, exited the vehicle and Portsmouth Police Investigator Steven Timberlake performed a pat-down search for weapons. He discovered a small plastic bag containing marijuana in appellant's pants pocket. The officers then handcuffed appellant and searched his vehicle. The search uncovered crack cocaine, among other items.
 {¶ 5} The Scioto County Grand Jury returned an indictment charging appellant with: (1) first-degree felony possession of cocaine; (2) first-degree felony trafficking in crack cocaine; (3) fifth-degree felony possession of cocaine; (4) tampering with evidence; and (5) possession of criminal tools.
 {¶ 6} Subsequently, appellant filed a motion to suppress evidence. He asserted that "his detention and arrest were made without probable cause." On May 4, 2007, the trial court held a suppression hearing.
 {¶ 7} At the hearing, Investigator Bryant testified that on the evening of August 27, 2006 the informant called appellant on appellant's cell phone to arrange for appellant to deliver crack cocaine. The informant arranged for appellant to meet him at the Kroger parking lot. Law enforcement officers set up surveillance and the informant remained in a vehicle with officers. Approximately ten to fifteen minutes after the informant's last phone call to appellant, appellant arrived at the Kroger parking lot in a green Chevrolet Trailblazer with Kentucky registration. Investigator Bryant explained that when appellant arrived, "[h]e circled the lot about three times. You could see he's looking for someone. As he's driving around real slow[,] he's kind of looking around, looking around. After he made about three passes, we decided at that point we'd make a traffic stop before he left the parking lot thinking that the informant was not going to show up to pick up the narcotics." Investigator Bryant stated that after appellant exited *Page 4 
the vehicle, Officer Timberlake conducted a pat-down search of appellant. After the pat-down search revealed marijuana, the officers searched appellant's vehicle and discovered approximately fifty grams of crack cocaine in the vehicle.
 {¶ 8} Investigator Bryant also explained that he knew the informant, that he had worked with him in the past, and that the informant had proved to be reliable. Investigator Bryant further noted that the informant had purchased drugs from appellant in the past.
 {¶ 9} The prosecution argued that Investigator Bryant's testimony demonstrated that the officers possessed probable cause to stop appellant's vehicle. The trial court agreed and overruled appellant's motion to suppress.
 {¶ 10} At the jury trial, the confidential informant testified that on August 27, 2006, he contacted Investigator Bryant about making a drug purchase from appellant. He stated that he met appellant about a year earlier and that he frequently purchased crack cocaine from him. The informant stated that he probably purchased drugs hundreds of times from appellant during the past year. The informant explained that on August 27, 2006 he called appellant and told him that he wanted to purchase a $100 bag of crack cocaine. Appellant told him to meet him in Rosemount. They eventually agreed to meet at the Kroger parking lot. He and Investigator Bryant waited in a van in the parking lot and about ten minutes later appellant appeared. The informant stated that he could not predict what type of vehicle appellant would be driving because appellant usually drove rental vehicles, which meant that he showed up with different vehicles almost every time.
 {¶ 11} Investigator Timberlake testified that after the officers stopped appellant's vehicle, he ordered appellant to exit the vehicle and patted him down for weapons. *Page 5 
While patting him down, Investigator Timberlake felt a plastic baggie in his cargo pocket, which he believed contained drugs. The officer removed the baggie from appellant's pocket and discovered that it contained marijuana. At that point, the officers handcuffed appellant and searched his vehicle.
 {¶ 12} After the state rested, appellant's counsel objected to "everything being introduced in to evidence." He asserted: "I mean there was no probable cause for the search[,] for the arrest, for the detention. It was all unconstitutionally seized." The court stated that it had previously ruled on the issues.
 {¶ 13} The jury found appellant guilty of: (1) first-degree felony possession of cocaine; (2) first-degree felony trafficking in crack cocaine; (3) fifth-degree felony possession of cocaine; and (4) possession of criminal tools, but not guilty of tampering with evidence.
 {¶ 14} On May 18, 2007, the trial court sentenced appellant to serve: (1) a mandatory nine-year prison term on the first-degree felony possession of cocaine offense; (2) a mandatory nine-year prison term on the trafficking charge; (3) twelve months for the fifth-degree felony drug possession charge; and (4) twelve months for the possession of criminal tools charge. The court also ordered the sentences to be served consecutively for a total sentence of twenty years. This appeal followed.
 I {¶ 15} In his first assignment of error, appellant argues that the trial court erred by denying his motion to suppress evidence. In particular, he asserts that the law enforcement officers lacked reasonable, articulable suspicion of criminal activity sufficient to justify a stop of his vehicle. Specifically, appellant contends that the informant's tip was not sufficiently reliable to justify the stop. Appellant additionally *Page 6 
argues that the trial court erred by failing to suppress the evidence uncovered as a result of the frisk. He contends that the officers lacked reasonable suspicion that he was armed and dangerous.
 {¶ 16} The prosecution asserts that the officers possessed probable cause that appellant was trafficking in drugs and, thus, their stop of appellant's vehicle did not violate the Fourth Amendment prohibition against unreasonable seizures. The prosecution then asserts that because the officers possessed probable cause to seize appellant, they also possessed probable cause to search him.
 A STANDARD OF REVIEW {¶ 17} Our analysis begins with the well-settled premise that appellate review of a trial court's decision on a motion to suppress evidence involves mixed questions of law and fact. See, e.g., State v.Book, 165 Ohio App.3d 511, 847 N.E.2d 52, 2006-Ohio-1102, at ¶ 9;State v. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. In hearing such motions, trial courts assume the role of trier of fact and are in the best position to resolve factual disputes and to evaluate witnesses credibility. See, e.g., State v. Burnside, 100 Ohio St.3d 152,797 N.E.2d 71, 2003-Ohio-5372, at ¶ 8; State v. Mills (1992),62 Ohio St.3d 357, 366, 582 N.E.2d 972. Appellate courts must accept a trial court's factual findings so long as competent and credible evidence supports those findings. See, e.g., State v. Metcalf (1996), 111 Ohio App.3d 142,145, 675 N.E.2d 1268; State v. Harris (1994), 98 Ohio App.3d 543, 546,649 N.E.2d 7. Appellate courts then independently review whether the trial court properly applied the law to the facts. See, e.g.,Book, supra at ¶ 9; State v. Williams (1993), 86 Ohio App.3d 37, 41, *Page 7 619 N.E.2d 1141. With these principles in mind, we turn to the case at bar.
 B GENERAL FOURTH AMENDMENT PRINCIPLES {¶ 18} The Fourth and Fourteenth Amendments to the United States Constitution, and Section 14, Article I of the Ohio Constitution, protect individuals against unreasonable searches and seizures.Delaware v. Prouse (1979), 440 U.S. 648, 662, 99 S.Ct. 1391,59 L.Ed.2d 660; State v. Gullett (1992), 78 Ohio App.3d 138, 143, 604 N.E.2d 176. Searches and seizures conducted outside the judicial process, without prior approval by either a judge or magistrate, are per se unreasonable under the Fourth Amendment subject only to specifically established and well-delineated exceptions. Katz v. United States (1967), 389 U.S. 347,357, 88 S.Ct. 507, 19 L.Ed.2d 576; State v. Sneed (1992),63 Ohio St.3d 3, 6-7, 584 N.E.2d 1160; State v. Braxton (1995), 102 Ohio App.3d 28,36, 656 N.E.2d 970. Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible. See Maumee v. Weisner (1999),87 Ohio St.3d 295, 297, 720 N.E.2d 507; Xenia v. Wallace (1988),37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.
 C PROBABLE CAUSE AND REASONABLE SUSPICION EXCEPTIONS TO THE WARRANT REQUIREMENT {¶ 19} Two exceptions to the warrant requirement include (1) short, investigative stops founded upon reasonable suspicion of criminal activity and (2) searches and seizures founded upon probable cause of criminal activity. See, e.g., Dunaway v. New York (1979), 442 U.S. 200,99 S.Ct. 2248, 60 L.Ed.2d 824; Terry v. Ohio (1968), *Page 8 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. In the case at bar, appellant argues that the reasonable suspicion standard applies. The prosecution contends, however, that the probable cause standard applies.
 {¶ 20} In State v. Taylor (1995), 106 Ohio App.3d 741, 748-749,667 N.E.2d 60, the court distinguished between an investigative stop and a seizure that is the functional equivalent of an arrest, which must be founded upon probable cause:
 "The investigatory detention is * * * less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. Terry, supra. A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions. Mendenhall, supra, 446 U.S. at 553, 100 S.Ct. at 1877, 1878, 64 L.Ed.2d at 508; Terry, supra, 392 U.S. at 16, 19, 88 S.Ct. at 1877, 1878, 20 L.Ed.2d at 903, 904.
 The Supreme Court in Mendenhall listed factors that might indicate a seizure. These factors include a threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be compelled, approaching the citizen in a nonpublic place, and blocking the citizen's path. Id. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509. A police officer may perform an investigatory detention without running afoul of the Fourth Amendment as long as the police officer has a reasonable, articulable suspicion of criminal activity. Terry, supra, 392 U.S. at 21, 88 S.Ct. at 1879, 20 L.Ed.2d at 906.
 * * * To perform [a seizure that is the functional equivalent of an arrest] the police officer must have probable cause. State v. Barker (1978), 53 Ohio St.2d 135, 7 O.O.3d 213, 372 N.E.2d 1324. A seizure is equivalent to an arrest when (1) there is an intent to arrest; (2) the seizure is made under real or pretended authority; (3) it is accompanied by an actual or constructive seizure or detention; and (4) it is so understood by the person arrested. Id. at syllabus." *Page 9 
 {¶ 21} In the case at bar, we believe that the officers' conduct demonstrates that they subjected appellant to an investigative stop. The officers used their vehicles to block appellant's vehicle and, thus, he obviously believed that he was not free to leave. No evidence exists, however, that the officers intended to arrest appellant. Instead, the testimony at the suppression hearing reveals that the officers intended to stop appellant's vehicle to investigate whether he possessed drugs. We therefore believe that the reasonable suspicion analysis provides the proper framework for disposing of this appeal.[3]
 D INVESTIGATIVE STOP EXCEPTION {¶ 22} The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop and briefly detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." Terry, 392 U.S. at 30; see, also, United States v. Arvizu
(2002), 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740; Illinois v.Wardlow (2000), 528 U.S. 119, 123, 120 S.Ct 573, 145 L.Ed.2d 570;State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271; State v.Venham (1994), 96 Ohio App.3d 649, 654, 645 N.E.2d 831, 833. To justify an investigative stop, the officer must be able to *Page 10 
articulate specific facts that would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime. See Terry, 392 U.S. at 27.
 {¶ 23} A valid investigative stop must be based upon more than a mere "hunch" that criminal activity is afoot. See, e.g., Arvizu; Wardlow, 528 U.S. at 124; Terry, 392 U.S. at 27. Reviewing courts should not, however, "demand scientific certainty" from law enforcement officers. Ward low, 528 U.S. at 125. Rather, a reasonable suspicion determination "must be based on commonsense judgments and inferences about human behavior." Id. Thus, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." Arvizu; Wardlow, 528 U.S. at 123.
 {¶ 24} A court that is determining whether a law enforcement officer possessed reasonable suspicion to stop an individual must examine the "totality of the circumstances." See, e.g., Arvizu, 534 U.S. at 273. The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" Id. (quoting United States v.Cortez (1981), 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621). Thus, when a court reviews an officer's reasonable suspicion determination, a court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers. Id.
 {¶ 25} Moreover, a particular factor under the totality of the circumstances test need not be criminal in and of itself. SeeArvizu; United States v. Sokolow (1989), 490 U.S. 1, 9, 109 S.Ct. 1581,104 L.Ed.2d 1 (stating that factors that are "consistent with innocent" activity may collectively amount to reasonable suspicion);Terry, *Page 11 392 U.S. at 22 (stating that a series of act "perhaps innocent in itself" may together add up to reasonable suspicion). Additionally, "[a] determination that reasonable suspicion exists * * * need not rule out the possibility of innocent conduct." Arvizu. Instead, the totality of the circumstances, whether innocent or not, must indicate that criminal activity is afoot. See e.g., Terry, supra.
 {¶ 26} An informant's tip may provide officers with the reasonable suspicion necessary to conduct an investigative stop. When officers base reasonable suspicion upon an informant's tip, the Ohio Supreme Court has identified several factors including "the informant's veracity, reliability and basis of knowledge" that are considered to be "highly relevant in determining the value of [the informant's] report."Maumee v. Weisner (1999), 87 Ohio St.3d 295, 300, 299, 720 N.E.2d 507
(quoting Alabama v. White (1990), 496 U.S. 325, 328, 110 S.Ct. 2412,110 L.Ed.2d 301). The Weisner court elaborated:
 "Where * * * the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. See id. The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop. Factors considered `"highly relevant in determining the value of [the informant's] report"' are the informant's veracity, reliability, and basis of knowledge. Id. at 328, 110 S.Ct. at 2415, 110 L.Ed.2d at 308, quoting Illinois v. Gates (1983), 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 543.
 To assess the existence of these factors, it is useful to categorize informants based upon their typical characteristics. Although the distinctions between these categories are somewhat blurred, courts have generally identified three classes of informants: the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified citizen informant. While the United States Supreme Court discourages conclusory analysis based solely upon these categories, insisting instead upon a totality of the circumstances review, it has acknowledged their relevance to an informant's reliability. The court has observed, for example, that an anonymous informant is comparatively unreliable and his tip, therefore, will generally require independent police corroboration. Alabama v. White, 496 U.S. at 329, 110 S.Ct. at 2415, 110 L.Ed.2d at 308. The court *Page 12 
has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: `[I]f an unquestionably honest citizen comes forward with a report of criminal activity-which if fabricated would subject him to criminal liability-we have found rigorous scrutiny of the basis of his knowledge unnecessary.' Illinois v. Gates, 462 U.S. at 233-234, 103 S.Ct. at 2329-2330, 76 L.Ed.2d at 545."
Id. at 299-300.
 {¶ 27} In State v. Tarver, Ross App. No. 07CA2950, 2007-Ohio-4659, we held that law enforcement officers had reasonable suspicion to stop a suspected drug dealer's vehicle based upon information obtained from a confidential informant. In Tarver, the informant advised officers that the defendant was driving from Dayton to Ross County to sell crack cocaine to the informant. The informant told the officers that the defendant typically drives a "gold Malibu." The defendant contacted the informant and requested that he meet him at a Dairy Queen store. The officers drove the informant to the Dairy Queen. Upon their arrival, the informant exited the vehicle, met with the defendant, and then entered a vehicle with him. The informant and the defendant then drove up the alley and turned onto another street. At that point, the officers stopped the vehicle. The officers searched the defendant and discovered a bag of "green leafy vegetation" in one pocket and a bag of "white rocks" in the other pocket. The defendant subsequently was charged with drug possession. He filed a motion to suppress evidence, arguing that the officers lacked reasonable suspicion to stop the vehicle.
 {¶ 28} On appeal, we determined that the officers possessed reasonable suspicion to stop the vehicle and disagreed with the defendant that the officers were required to possess probable cause. In finding that the officers possessed reasonable suspicion, we explained: *Page 13 
 "[T]he drug task force received informant from an informant that someone named `Darnell' was driving from Dayton to Ross County to deliver crack-cocaine in exchange for money. The informant spoke with `Darnell' several times on a cell phone in the presence of task force members. The informant also described `Darnell' as a `black male.' During the last conversation, `Darnell' directed the informant to meet him behind a Dairy Queen. The task force then drove the informant to that exact location. There, the informant met with an African-American male, entered a vehicle with that man and the vehicle proceeded to exit the parking lot. We agree with the trial court's conclusion that the information received from the informant, together with the task force's own observation of the cell phone calls and events at the Dairy Queen, established a reasonable belief of criminal activity and provided sufficient justification for an investigative stop."
Id. at ¶ 10.
 {¶ 29} In State v. Hackett, 171 Ohio App.3d 235, 870 N.E.2d 235,2007-Ohio-1868, the court likewise held that an informant's tip provided officers with reasonable suspicion to stop the defendant's vehicle. The court explained: "The detective, a member of the Toledo police vice-narcotics unit, had previously worked with the same confidential informant; at a prior date, the informant's information led to a conviction in an unrelated drug-offense case. The confidential informant contacted the detective with a tip that appellant `deals drugs.' The informant also provided specific information as to the time, place, and manner of appellant's appearance." Id. at ¶ 14.
 {¶ 30} Similarly, in the case at bar the informant's tip provided the officers with sufficient reasonable suspicion to stop appellant's vehicle. The informant told officers that appellant would be delivering drugs to him at the Kroger parking lot. The informant had worked with the officers for the past six months to one year and had proved reliable in the past. Furthermore, the informant stated that appellant used to be his drug supplier. Although the informant did not identify the type of vehicle appellant would be driving, he explained that appellant typically used rental vehicles, which differed each time he met appellant. Officers later discovered that appellant, in fact, had been driving *Page 14 
a rental vehicle. The informant also remained with the officers and identified appellant when he entered the Kroger parking lot. The officers observed appellant and noticed that he circled the parking lot three times, as if he were looking for someone. This independent observation helped establish the reliability of the informant's tip. Thus, even though the facts in the case at bar differ slightly from those in Tarver and Hackett, the totality of the circumstances available to the officers suggested that appellant was engaged in criminal activity. See, also, State v. Isabell, Cuyahoga App. No. 87113,2006-Ohio-3350 (finding officers possessed probable cause to stop and search the defendant's vehicle based upon similar facts). Moreover, as we recognized in Tarver, if the information had proven to be false, the informant might have been subject to criminal penalties for making a false police report. See R.C. 2917.32(A)(3). Generally, the risk of arrest helps to establish an informant's reliability. See Adams v.Williams (1972), 407 U.S. 143, 146-147, 92 S.Ct. 1921, 32 L.Ed.2d 612.
 {¶ 31} Appellant nevertheless asserts that we should follow State v.Riveria, Lucas App. No. L-04-1369, 2006-Ohio-1867, and find that the officers did not have reasonable suspicion. We, however, findRiveria distinguishable. In Riveria, the court rejected the prosecution's argument that the informant's tip provided the officers with reasonable suspicion to stop the defendant's vehicle. The court explained: "The informant had no prior history in providing the police with information and was himself a member of the criminal milieu. Although the police had no indicia to support the informant's veracity or the reliability of his information, the only independent investigation they conducted to corroborate his information was to have the informant positively identify appellant's photo." Id. at ¶ 26. Conversely, in the case at bar the informant had apparently worked with the officers for the past six months to one year *Page 15 
and has proved reliable. Thus, we do not find Riveria dispositive of this issue.
 {¶ 32} Consequently, we disagree with appellant that the officers lacked reasonable suspicion to stop his vehicle.
 E SCOPE OF FRISK {¶ 33} Appellant next asserts that the trial court should have suppressed the evidence obtained as a result of the frisk because the officer exceeded the lawful scope of a frisk for weapons.
 {¶ 34} Initially, we note that appellant failed to raise this issue in his motion to suppress or at the suppression hearing. Instead, he first raised the issue during trial. Consequently, he has waived the error. See Xenia v. Wallace (1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889. Assuming, arguendo, that appellant had not waived the issue, we would find no error.
 {¶ 35} The scope of a Terry search is "a narrowly drawn authority to permit a reasonable search for weapons for the protection of a police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Terry, 392 U.S. at 27. Thus, during a Terry-investigative stop, an officer "may search only for weapons when conducting a pat down of the suspect." State v. Evans (1993),67 Ohio St.3d 405, 414, 618 N.E.2d 162.
 {¶ 36} The purpose of a Terry "`search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence.'" Evans, 67 Ohio St.3d at 408 (quoting Adams v.Williams (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 1923,32 L.Ed.2d 612). A Terry pat-down search is limited in scope to discovering *Page 16 
weapons that might be used to harm the officer "and cannot be employed by the searching officer to search for evidence of a crime."Evans, 67 Ohio St.3d at 414. Thus, a Terry search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry, 392 U.S. at 29. When a protective search exceeds the determination of whether the suspect is armed, it is not valid underTerry, and its fruits will be suppressed. Id.
 {¶ 37} The Ohio Supreme Court has recognized that "[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." Evans, 67 Ohio St.3d at 413, citing State v. Williams (1990),51 Ohio St.3d 58, 554 N.E.2d 108, and United States v. Ceballos
(E.D.N.Y. 1989), 719 F.Supp. 119, 126 ("The nature of narcotics trafficking today reasonably warrants the conclusion that a suspected dealer may be armed and dangerous."); see, also, State v. Thompson, Hamilton App. No. C-050400, 2006-Ohio-4285 (stating that "[t]he very nexus between drugs and guns can create a reasonable suspicion of danger to the officer" and "[w]hen investigating drug activity, officers have a legitimate concern for their own safety, and that concern can justify a pat-down search for weapons").
 {¶ 38} In the case at bar, the officers suspected appellant of engaging in drug activity. Thus, the right to frisk was virtually automatic. Investigator Timberlake stated that he patted appellant down for weapons and felt what he believed to be contraband. SeeMinnesota v. Dickerson (1993), 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 2130 (stating that officers may remove contraband if its nature is immediately apparent). See, also, State v. Kennedy (Sept. 30, 1999), Ross App. No. 99CA2472 (seizure of *Page 17 
cellophane bag of marijuana), citing State v. Trine (Conn. 1996), 236 Conn. 216, 673 A.2d. 1098 (seizure of rock of crack cocaine in baggie);People v. Mitchell (Ill. 1995), 165 Ill.2d 211, 209 Ill.Dec. 41,650 N.E.2d 1014 (rock of crack cocaine found to be "immediately apparent");State v. Scott (Ia. 1994), 518 N.W.2d 347 (seizure of marijuana in baggie). The question of whether a certain object is "immediately apparent" as contraband to an officer during a pat-down search is a question of fact for the trial court, and the unique facts and circumstances present in each case must be considered. Generally, the trial court is in the best position to assess witness credibility. Here, we find nothing in the record to suggest that the officer exceeded the scope of a lawful frisk for weapons.
 {¶ 39} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.
 II {¶ 40} In his second assignment of error, appellant asserts that the trial court erred by imposing separate sentences for the possession and trafficking of crack cocaine offenses. Appellant claims that the offenses are allied offenses of similar import. We disagree.
 {¶ 41} Initially, we note that appellant did not, prior to or at the sentencing hearing, argue that the two offenses constitute allied offenses of similar import. Thus, absent plain error he has waived the issue. Under Crim. R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." For a reviewing court to find plain error, the following three conditions must exist: (1) an error in the proceedings; (2) the error must be plain, i.e., the error must be an "obvious" defect in the trial proceedings; and (3) the error must *Page 18 
have affected "substantial rights," i.e., the trial court's error must have affected the outcome of the trial. See, e.g., State v. Noling,98 Ohio St.3d 44, 56, 2002-Ohio-7044, 781 N.E.2d 88; State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240; State v. Sanders
(2001), 92 Ohio St.3d 245, 257, 750 N.E.2d 90; State v. Hill (2001),92 Ohio St.3d 191, 200, 749 N.E.2d 274. Furthermore, the Ohio Supreme Court has stated that Crim. R. 52(B) is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990), 53 Ohio St.3d 107,111, 559 N.E.2d 710; see, also, State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus. A reviewing court should consider noticing plain error only if the error "`"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'" Barnes, 94 Ohio St.3d at 27 (quoting United States v.Olano (1993), 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508, quoting United States v. Atkinson (1936), 297 U.S. 157, 160,56 S.Ct. 391, 80 L.Ed. 555).
 {¶ 42} Previously, we held in State v. McGhee, Lawrence App. No. 04CA15, 2005-Ohio-1585, that trafficking in cocaine and possession of cocaine are not allied offenses of similar import. We stated:
 "In comparing the elements of [trafficking in cocaine and possession of cocaine] in the abstract, we conclude that the elements of R.C. 2925.0[3](A)(2) do not correspond to the elements of R.C. 2925.11(A) to such a degree that the commission of one requires the commission of another. See State v. Alvarez, Butler App. No. CA2003-03-067, 2004-Ohio-2483 (possession of and trafficking in a controlled substance are not allied offenses of similar import); State v. Rotarius, Cuyahoga App. No. 78766, 2002-Ohio-666 (possession of drugs and their preparation for sale are not allied offenses of similar import). A person may obtain, possess or use a controlled substance in violation of R.C. 2925.11 without preparing it for shipment or distributing it in violation of R.C. 2925.07. Likewise, a person may distribute or prepare a controlled substance for distribution without actually possessing it, e.g., when one directs the transportation or preparation of the controlled substance for *Page 19 
sale or serves as a middleman in a drug transaction. Therefore, we conclude that counts one (trafficking in crack cocaine) and two (possession of crack cocaine) are not allied offenses of similar import."
Id. at ¶ 15.
 {¶ 43} However, the Ohio Supreme Court recently rejected a similar analysis and held that trafficking in cocaine under R.C. 2925.03(A)(2) and possession of cocaine under R.C. 2925.11(A) are allied offenses of similar import. See State v. Cabrales, Ohio St.3d _, _ N.E.2d _,2008-Ohio-1625, paragraph two of the syllabus. The court explained:
 "To be guilty of possession under R.C. 2925.11(A), the offender must `knowingly obtain, possess, or use a controlled substance.' To be guilty of trafficking under R.C. 2925.03(A)(2), the offender must knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, knowing, or having reason to know, that the substance is intended for sale. In order to ship a controlled substance, deliver it, distribute it, or prepare it for shipping, etc., the offender must `hav[e] control over' it. R.C. 2925.01(K) (defining `possession'). Thus, trafficking in a controlled substance under R.C. 2925.03(A)(2) and possession of that same controlled substance under R.C. 2925.11(A) are allied offenses of similar import, because commission of the first offense necessarily results in commission of the second."
Id. at ¶ 30 (emphasis sic).
 {¶ 44} The court then considered the second part of the analysis, which requires an examination of the defendant's conduct to determine whether he committed the two offenses with a separate animus or committed them separately. The court determined that Cabrales committed the offenses "with a single animus: to sell it." Id. at ¶ 31. The court therefore concluded that he could be convicted of only one offense. Id.
 {¶ 45} In the case at bar, based upon Cabrales, we conclude that trafficking in cocaine under R.C. 2925.03(A)(2) and possession of cocaine under R.C. 2925.11(A) are allied offenses of similar import. Appellant, however, did not argue this issue in the *Page 20 
trial court before sentencing to allow consideration of whether he committed the offenses separately or with a separate animus. Therefore, we remand this issue to the trial court so that it may determine whether appellant committed the offenses separately or with a separate animus.
 {¶ 46} Accordingly, based upon the foregoing reasons, we hereby sustain appellant's second assignment of error.
 III {¶ 47} In his third assignment of error, appellant argues that the trial court erred by imposing consecutive prison terms. He asserts that the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1,845 N.E.2d 470, 2006-Ohio-856, excised the statutory authority for consecutive prison terms and, thus, no longer does authority exist for imposing consecutive sentences. The prosecution, however, asserts that the trial court retains discretion to impose consecutive sentences. We agree.
 {¶ 48} In State v. Johnson, Ohio St.3d, N.E.2d, 2008-Ohio-69, the Ohio Supreme Court continued to adhere to the principle that sentencing courts retain discretion "to determine whether consecutive sentences are appropriate based upon the particular facts and circumstances of the case." Id. at ¶ 18, citing State v. Saxon, 109 Ohio St.3d 176,2006-Ohio-1245, 846 N.E.2d 824, ¶ 9; State v. Foster 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus, ¶ 100 ("Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.").
 {¶ 49} Moreover, in State v. Land, Auglaize App. No. 2-07-20,2007-Ohio-6963, the court rejected the argument that afterFoster, a trial court lacks authority to impose *Page 21 
consecutive sentences. The court stated:
 "* * * Land's argument ignores the explicit holdings of Foster, in which the Court clearly stated that `[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.' 109 Ohio St.3d at paragraph seven of the syllabus (emphasis added).
 Additionally, the Court stated `[o]ur remedy does not rewrite the statutes but leaves courts with full discretion to impose a prison term within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant without the mandated judicial findings that Blakely [v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403] prohibits.' Id. at ¶ 102. `Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range.' Id. at ¶ 105."
Id. at ffl|12-13.
 {¶ 50} In the case at bar, appellant has not argued that his sentences fall outside of the statutory range. Thus, we find his argument meritless.
 {¶ 51} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's third assignment of error. However, we hereby reverse and remand the trial court's judgment as it pertains to appellant's second assignment of error. In all other respects, we affirm the trial court's judgment.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed in part and reversed in part and the cause remanded. Appellee shall recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J.: Concurs in Judgment Opinion with Opinion
Kline, J.: Dissents with Opinion
[3] Although the trial court used a probable cause analysis, we may nevertheless uphold its judgment on other grounds. See, e.g., State exrel. McGrath v. Ohio Adult Parole Auth., 100 Ohio St.3d 72,796 N.E.2d 526, 2003-Ohio-5062, at ¶ 8 ("Reviewing courts are not authorized to reverse a correct judgment on the basis that some or all of the lower court's reasons are erroneous"); Morehead v. Conley (1991),75 Ohio App.3d 409, 414, 599 N.E.2d 786.
Furthermore, we note that during the trial court proceedings, appellant limited his argument to whether the officers possessed probable cause. He did not raise any argument regarding reasonable suspicion. Even though appellant changes his tune on appeal, we nonetheless will consider the reasonable suspicion argument as if he had properly raised it.