[Cite as *State v. Cutright*, 2015-Ohio-374.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | Case No. 14CA3442 |
| v. | : | |
| | : | <u>DECISION AND</u> |
| KARICE M. CUTRIGHT, | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| Defendant-Appellee. | : | Released: 01/29/2015 |

APPEARANCES:

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Jeffrey C. Marks, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellant.

Timothy Young, Ohio Public Defender and James S. Szorady, Assistant Ohio Public Defender, Chillicothe, Ohio, for Appellee.

Per Curiam.

{¶ 1} The state of Ohio, appellant, appeals the decision of the Ross County Court of Common Pleas sustaining appellee-defendant Karice M. Cutright's motion to suppress evidence seized during a traffic stop. A police officer stopped Cutright's vehicle after a citizen flagged down the officer and relayed a complaint. The citizen reported that she saw a group of people exit a vacant house; and she suspected the group to be engaged in drug related activity. The trial court granted Cutright's motion to suppress because the state failed to prove that the officer possessed reasonable suspicion to stop the vehicle. For the following reasons, we sustain the state of Ohio's assignment of error, and reverse the judgment of the trial court. This cause is remanded to the trial court so it may decide Cutright's motion to suppress applying the proper legal standard.

Statement of Facts

{¶ 2} In March 2013, appellee-defendant, Cutright was indicted on one count of Possession of Heroin, a fifth degree felony, in violation of R.C. 2925.11 and one count of Illegal Conveyance of Prohibited Items onto Ground of a Specified Governmental Facility, a third degree felony in violation of R.C. 2921.36. In October 2013, Cutright filed a motion to suppress all evidence resulting from a traffic stop on November 12, 2012.

{¶ 3} The parties presented the facts during the hearing on the motion to suppress. Sergeant Timothy Gay ("Sgt. Gay") was the only witness that was presented at the hearing. On November 30, 2012, Sgt. Gay was in the middle of second shift when Carrie Brown ("Brown") approached him. Brown was a resident of the neighborhood Sgt. Gay was patrolling. Sgt. Gay testified that he conversed with Brown through his cruiser window, as he remained seated in the vehicle. Sgt. Gay testified:

> SHE ADVISED THAT THERE WAS A HOUSE ACROSS THE STREET FROM HER THAT WAS VACANT, THAT SHE SUSPECTED THERE WAS DRUG DEALERS WORKING OUT OF THAT HOUSE, THE VACANT HOUSE, AND THAT SHE SAW PEOPLE COMING OUT OF THAT HOUSE GETTING INTO A WHITE VAN THAT WAS PARKED JUST UP FROM WHERE I STOPPED TO TALK TO HER.

{¶ 4} Sgt. Gay testified that the area was known for drug activity. However, Sgt. Gay's police report of the incident did not specify that the area was known for drug activity. Sgt. Gay saw the white van in question as Brown was talking to him. As Sgt. Gay was still speaking to Brown, the van pulled away and began traveling westbound. Less than a quarter mile down the road, Sgt. Gay marked the van on dispatch and initiated a stop. Sgt. Gay gave the following testimony on direct examination:

MARKS [PROSECUTOR]: WHY DID YOU THEN INITIATE A TRAFFIC STOP ON THE WHITE VAN?

GAY: TO INVESTIGATE THE COMPLAINT OF BEING AT THE VACANT HOUSE AND DRUG ACTIVITY.

MARKS: WHAT WERE YOU, WHAT PARTICULAR CRIMES WERE YOU INVESTIGATING AT THAT POINT IN TIME?

GAY: THE TRESPASSING OR POSSIBLY BURGLARY AT A RESIDENCE, AND POSSIBLE DRUG ACTIVITY.

MARKS: AND YOU STATE THAT CUTRIGHT WAS IN THE VAN WHEN YOU STOPPED IT?

GAY: YES.

{¶5} On cross examination Sgt. Gay testified:

SZORADY [DEFENSE COUNSEL]: AND THEN SHE SAYS AND I'M QUOTING THIS FROM YOUR REPORT, "SHE THINKS THEY MAY BE USING DRUGS". [SIC]

GAY: YES.

SZORADY: OKAY. SHE DIDN'T KNOW ANY OF THE OCCUPANTS OF THE VAN, NONE OF THAT RELAYED TO YOU THAT SHE DIDN'T KNOW ANY OF THE OCCUPANTS OF THE VAN?

GAY: RIGHT

***

SZORADY: MS. BROWN DOESN'T INDICATE THAT SHE SEES ANY DRUG USE, CORRECT? SHE DIDN'T SEE ANYONE USING DRUGS?

GAY: NO NOT THAT I KNOW OF, SHE'D HAVE TO TESTIFY TO THAT.

SZORADY: AND YOU DIDN'T SEE ANY DRUGS BEING USED WHEN YOU PULLED UP…WELL YOUR INITIAL LOOK AT THE VAN WHEN YOU'RE THERE, YOU DON'T SEE ANYBODY USING DRUGS.

GAY: RIGHT.

SZORADY: AND THEN ONCE YOU PULLED IT OVER YOU DON'T SEE ANYONE USING DRUGS AT THE TIME, RIGHT?

GAY: RIGHT.

SZORADY: SO EVERYTHING THAT YOU BASED YOUR INVESTIGATION ON AT THIS POINT IS THROUGH CARRIE BROWN WHO IS A RESIDENT IN THAT NEIGHBORHOOD.

GAY: RIGHT.

SZORADY: SO MS. BROWN GIVES YOU…ESSENTIALLY SHE SAYS I HAVE A HUNCH THAT THIS IS GOING ON, AND YOU FOLLOWED THAT.

GAY: RIGHT.

{¶ 6} After the stop, Sgt. Gay checked out the house in Brown's complaint. He testified: "The house appeared to be vacant. There were no signs of any forced entry. There was no damage that I could find, and I had no way to get in and check any further."

{¶ 7} The trial court granted Cutright's motion to suppress. At the conclusion of the suppression hearing, the trial court articulated its findings of fact and reason for its ruling. The court stated:

SHE [BROWN] DIDN'T HAVE ANY SPECIFIC INFORMATION TO WHICH SHE PROVIDED TO HIM [SGT. GAY] OTHER THAN JUST HER HUNCH. IT'S MY UNDERSTANDING FROM HIS [SGT. GAY] TESTIMONY THAT HE DID NOT HAVE ANY DRUG ABUSE COMPLAINTS FROM THE SPECIFIC ADDRESS WHERE THE VAN WAS, BUT FROM THE BUILDING NEXT DOOR.

A WHITE VAN WAS PARKED NEAR THE BUILDING WHERE HE DID HAVE SPECIFIC INFORMATION OF PREVIOUS DRUG ACTIVITY THOUGH. THE WHITE VAN THEN PULLED AWAY, TRAVELED LESS THAN A QUARTER OF MILE [SIC] AND OFFICER GAY STOPPED THE VEHICLE.

THE COURT WOULD NOTE THAT REASONABLE CAUSE FOR [SIC] STOP DOESN'T HAVE TO BE BASED SOLELY ON A POLICE OFFICER'S PERSONAL OBSERVATIONS AS IN TERRY. HOWEVER, IT DOES REQUIRE I THINK SPECIFIC INFORMATION COMING FROM AN INDIVIDUAL THAT WOULD HAVE BEEN ABLE TO PROVIDE IT. IN THIS CASE IT WAS NOT NECESSARILY AN ANONYMOUS SOURCE, BUT WE ALSO DON'T KNOW THE VERACITY OF MS. BROWN. WE DON'T KNOW WHETHER SHE IS RELIABLE, IF SHE HAS PROVIDED RELIABLE INFORMATION IN THE PAST I JUST SIMPLY DON'T KNOW.

IT'S EQUALLY POSSIBLE THAT MS. CUTRIGHT WAS AN APPRAISER, OR AN ELECTRICIAN, OR SOMEBODY HIRED TO WORK AT THAT HOUSE AS ANY OTHER THING.

BASED ON ALL THE EVIDENCE THAT HAS BEEN SUBMITTED, THE

COURT FINDS THAT THE STATE DID NOT MEET ITS BURDEN, AND AS

SUCH THE COURT FINDS THERE WAS NOT PROBABLE CAUSE OR

REASONABLE SUSPICION TO STOP THE VEHICLE IN THIS CASE.

{¶ 8} The state asserts in this appeal that the ruling on the motion to suppress has

rendered its proof of the charges so weak in its entirety that any reasonable possibility of

effective prosecution has been destroyed.

Appellant's Sole Assignment of Error:

THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT-

APPELLEE'S MOTION TO SUPPRESS DUE TO THE FACT THAT THE

OFFICER POSSESSED A REASONABLE SUSPICION OF CRIMINAL

ACTIVITY, BASED UPON SPECIFIC AND ARTICULABLE FACTS, WHICH

ALLOWED HIM TO PULL OVER THE VEHICLE IN WHICH THE

DEFENDANT-APPELLEE WAS A PASSENGER WITHOUT VIOLATION OF

ANY OF HER CONSTITUTIONAL RIGHTS

{¶9} The state argues that the trial court erred because the information from Brown

provided Sgt. Gay with reasonable suspicion that a trespass or possibly a burglary or breaking

and entering had been committed. The state also contends that the trial court made a mistake of

law when it determined that there could not be much weight given to the information Brown

relayed. As a result, according to the state, Sgt. Gay was justified in initiating an investigative

stop of appellee Cutright.

{¶ 10} Appellee Cutright argues that under the totality of the circumstances test, the trial

court properly weighed the credibility and veracity of Brown's tip and reached the correct

conclusion in granting the motion to suppress. Specifically, Cutright suggests that the state

incorrectly sets forth that an identified citizen informant's tip is reliable based solely on their

status. Cutright states that Sgt. Gay witnessed no drug activity; and Brown did not witness any

drug use or activity. In addition, no testimony was presented demonstrating how Brown knew the

house in question was vacant.

### A. Standard of Review

{¶ 11} Our review of a trial court's decision on a motion to suppress presents a mixed

question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d

71, ¶ 8. When considering a motion to suppress, the trial court acts as the trier of fact and is in

the best position to resolve factual questions and evaluate witness credibility. *Id.* Accordingly,

we defer to the trial court's findings of fact if they are supported by competent, credible evidence.

*Id.* Accepting those facts as true, we must independently determine whether the trial court

reached the correct legal conclusion in analyzing the facts of the case. *Id.*

### B. Investigative Stop

{¶ 12} The Fourth Amendment to the United States Constitution and Section 14, Article I

of the Ohio Constitution guarantee the right of the people to be free from unreasonable searches

and seizures. *See State v. Orr,* 91 Ohio St.3d 389, 391, 2001-Ohio-50, 745 N.E.2d 1036. These

two provisions contain nearly identical language and the Supreme Court of Ohio has interpreted

them as affording the same level of protection. *Id.* "Once the defendant demonstrates that he was

subjected to a warrantless search or seizure, the burden shifts to the State to establish that the

warrantless search or seizure was constitutionally permissible." *State v. Hansard*, 4th Dist.

Scioto No. 07CA3177, 2008–Ohio–3349, at ¶ 14, citing *Maumee v. Weisner*, 87 Ohio St.3d 295,

297, 1999–Ohio–68, 720 N.E.2d 507 and *Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988), at paragraph two of the syllabus.

{¶ 13} Based on the parties' arguments on appeal, the stop at issue in this case is an investigative stop subject to Fourth Amendment jurisprudence. The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop and briefly detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." *State v. Abernathy,* 4th Dist. Scioto No. 07CA3160, 2008-Ohio-2949 ¶22-24, quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *see also United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct 573, 145 L.Ed.2d 570 (2000); *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991); *State v. Venham*, 96 Ohio App.3d 649, 654, 645 N.E.2d 831, 833 (1994).

{¶ 14} A valid investigative stop must be based upon more than a mere "hunch" that criminal activity is afoot. *See e.g.*, *Arvizu* at 273; *Wardlow* at 124; *Terry* at 27. Reviewing courts should not, however, "demand scientific certainty" from law enforcement officers. *Wardlow* at 125. Rather, a reasonable suspicion determination "must be based on commonsense judgments and inferences about human behavior." *Id.* Thus, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizui* at 274*; Wardlow* at 123.

{¶ 15} A court that is determining whether a law enforcement officer possessed reasonable suspicion to stop an individual must examine the "totality of the circumstances." *See e.g.*, *Arvizu* at 273. The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.*

quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Thus, when a court reviews an officer's reasonable suspicion determination, a court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers. *Id.*

{¶ 16} An informant's tip may provide officers with the reasonable suspicion necessary to conduct an investigative stop. *Abernathy*, 2008-Ohio-2949 at ¶ 26. Where the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. *Maumee*, 87 Ohio St.3d 295, 1999-Ohio-68, 720 N.E.2d 507 at 299. The appropriate analysis then is whether the tip itself has sufficient indicia of reliability to justify the investigative stop. *Id.* Factors considered "highly relevant in determining the value of the [informant's] report" are the informant's veracity, reliability, and basis of knowledge. *Id.* (Citations omitted).

C. Analysis

{¶ 17} In the case sub judice, the information leading to the stop of Cutright came from Brown. Courts have generally classified informants into three groups: the anonymous informant, the known informant, and the identified citizen informant. *Maumee* at 300. Brown cannot be classified as anonymous or a known informant ("someone from the criminal world who has provided previous reliable tips") given the circumstances of her report to Sgt. Gay. *Id.* Therefore, for purposes of constitutional analysis, Brown is an "identified citizen informant" in this case. The trial court recognized Brown's status, stating: "In this case it was not necessarily an anonymous source, but we also don't know the veracity of Brown. We don't know whether she is reliable, if she has provided reliable information in the past. I simply don't know."

{¶ 18} In *Maumee* the Ohio Supreme Court further explained:

While the United States Supreme Court discourages conclusory analysis based

solely upon these categories, insisting instead upon a totality of the circumstances

review, it has acknowledged their relevance to an informant's reliability. The

court has observed, for example, that an anonymous informant is comparatively

unreliable and his tip, therefore, will generally require independent police

corroboration. *Alabama v. White,* [496 U.S. 325, 330, 110 S.Ct. 2412, 110

L.Ed.2d 301 (1990).] The court has further suggested that an identified citizen

informant may be highly reliable and, therefore, a strong showing as to the other

indicia of reliability may be unnecessary: "[I]f an unquestionably honest citizen

comes forward with a report of criminal activity—which if fabricated would

subject him to criminal liability—we have found rigorous scrutiny of the basis of

his knowledge unnecessary.*" Illinois v. Gates,* [462 U.S. 213, 233–234, 103 S.Ct.

2317, 76 L.Ed.2d 527 (1983).]

*Id.* at 300.

{¶ 19} Based on the evidence in this case, we find the trial court erred in granting

appellant Cutright's motion to suppress. The state argues 1) the trial court erred in its assessment

of the veracity of Brown and 2) Sgt. Gay possessed reasonable suspicion to initiate an

investigatory stop. First we will address the trial court's assessment of the credibility of Brown.

{¶ 20} According to the United States Supreme Court's analysis, a main difference

between an anonymous informant and an identified citizen informant is that an anonymous

informant will generally require independent police corroboration. *Id*. The analysis also suggests

that increased scrutiny of an identified informant may be unnecessary. The state cites *State v.

Thompson*, 4th Dist. Washington No. 94CA35, 1995 Ohio App., where this Court stated: "When

an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case."

{¶ 21} Conclusory analysis based solely upon the category a witness falls under is discouraged. *Maumee* at 300. However, the primary concern for a court is to evaluate the tip's weight and reliability in order to determine if reasonable suspicion existed. *Id.* at 299. In that regard, the trial court concluded that it did not have any information pertaining to Brown's reliability. The trial court evaluated Brown's tip regarding appellee Cutright stating: "It's equally possible that Ms. Cutright was an appraiser, or an electrician, or somebody hired to work at that house as any other thing."

{¶ 22} We are mindful that the trial court is in the best position to resolve factual questions and evaluate witness credibility. Nevertheless, in doing so, the trial court must apply the correct analytical factors. The reliability of a known citizen informant may be presumed. *Id.* at 300, citing *U.S. v. Parsquarille* (C.A.6, 1994), 20 F.3d 682, 689. *See, also, State v. Summers*, 5th Dist. Morgan No. 02CA7, 2002 -Ohio-5284, ¶ 26 citing *State v. Gardner*, 74 Ohio St.3d 49, 63, 656 N.E.2d 623, 1995-Ohio-168 citing *Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Yet the trial court concluded that it did not know Brown's reliability without stating any reason why it should be in question. Therefore, we find that the trial court erred in its analysis of the reliability of Brown's information.

{¶ 23} Next, the state argues that regardless of the drug activity "hunch," Brown was able to inform Sgt. Gay that the individuals in the van had just left a vacant house where no one was living at the time. The state claims that, with those specific facts, Sgt. Gay possessed reasonable suspicion to stop the white van on the suspicion of trespass. The state contends that the trial court

seemed to completely disregard this information and only focused on the likelihood of a drug offense having been committed.

{¶ 24} Examining the information Brown supplied Sgt. Gay, we find the trial court also erred in its analysis of whether Sgt. Gay possessed reasonable suspicion to stop Cutright. Concerning the suspicion of trespass, the trial court concluded that it was possible that the individuals walking out of the vacant house and getting in the van were hired to work at the house. The incident occurred after 9:30 P.M., so it seems improbable that such an assumption could be correct. More importantly, the principal function of an investigative stop is to resolve the very ambiguity that equally plausible innocent and culpable possibilities create. Such a stop is reasonably designed to enable police to quickly determine whether they should allow a suspect to go about her business or to hold her to answer charges. The proper analysis focuses upon whether there is a substantial possibility that criminal conduct has occurred, is occurring, or is about to occur. *See, City of Chillicothe v. Ingham,* 4th Dist. Ross No. 1948, 1994 WL 67786 (Feb. 24, 1994), Harsha, P.J., dissenting, and the authorities cited there at *4. The test regarding reasonable suspicion is not whether there is a potentially innocent explanation for defendant's behavior. Here, a resident of a neighborhood known for drug activity reported that individuals were coming out from an abandoned house after 9:30 P.M. The proper legal standard is whether under the totality of the circumstances, the officer had a reasonable suspicion that criminal activity, in this case a trespass, "may be afoot."

{¶ 25} In light of the foregoing, we reverse the trial court's decision to grant Cutright's motion to suppress. This cause is remanded to the trial court so it may decide Cutright's motion to suppress applying the proper legal standards. We add, however, that our opinion should not be

construed as a comment on the actual merits of the motion to suppress after the trial court applies the proper legal standards.

JUDGMENT REVERSED AND CAUSE REMANDED.

Hoover, P.J., dissenting:

{¶ 26} I respectfully dissent from the per curiam opinion. I would overrule the state's sole assignment of error and affirm the judgment of the trial court.

As the trial court is in the best position to resolve factual questions and evaluate witness credibility, I would defer to the trial court's findings if supported by competent, credible evidence. *Burnside*, *supra*, at ¶ 8. Here, the court expressed a neutral opinion on whether Brown was reliable or not. Sgt. Gay never testified that Brown reported any specific witness of drug activity, as it was just her hunch that the individuals were engaged in such behavior. It was Brown's hunch, not Sgt. Gay's hunch, that the white van was involved in drug activity. It is inconsequential that Sgt. Gay investigated the house later, after the traffic stop, to confirm that the house was in fact vacant. Therefore, I would find that the trial court's evaluation of Brown was in accordance with the proper legal standard.

{¶ 27} Based on the information Brown supplied to Sgt. Gay, the trial court did not err in its analysis of whether Sgt. Gay had reasonable suspicion to stop the white van. With respect to the issue of a possible trespass, Brown's information did not report inherent illegal activity. Another observer at the same time may have reasonably concluded that the individuals were there for a legitimate purpose. It is well established that reasonable suspicion must be established on more than just a "hunch."*Arvizu*, *supra*, at 274. The trial court found that Brown lacked specific information other then her hunch. On cross examination, Sgt. Gay answered in the affirmative when he was asked if all he possessed was a hunch. " 'The articulable and reasonable

suspicion must exist in the officer's mind at the time of the stop and cannot be based on facts obtained after the initial stop.' " *Chillicothe v. Ingham*, 4th Dist. Ross No. 1948, 1994 WL 67786, *2 (Feb. 24, 1994), quoting *State v. Freeman*, 64 Ohio St.2d 291, 294, 414 N.E.2d 1044 (1980). Affirming information regarding the status of the house only came about after the stop occurred. After the stop, Sgt. Gay checked out the house in Brown's complaint. He saw no signs of any forced entry. He could not find any damage.

{¶ 28} When viewing the totality of the circumstances in this case, sufficient articulable facts did not exist to constitutionally justify the stop. This Court has stated the following:

> "***[T]he Supreme Court made it clear that good faith, accompanied only by an
> inarticulate hunch, is not enough for even the temporary 'seizure' of a stop. And
> that is all that appears on this record. * * * This may have been enough reason for
> an officer to become suspicious enough to keep an eye on defendant. But it can
> hardly be deemed to be an objective indicator of reasonable suspicion of criminal
> conduct. * * * The inarticulate hunch, the awareness of something unusual, is
> reason enough for officers to look sharp. Their knowledge and experience identify
> many incidents in the course of a day that an untrained eye might pass without
> any suspicion whatever. But awareness of the unusual, and a proper resolve to
> keep a sharp eye, is not the same as an articulated suspicion of criminal conduct.
> Defendant's acts, as reported, were too innocuous to warrant the intrusion of a
> temporary seizure for questioning."

*Id.* at *3, quoting *United States v. Montgomery*, 561 F.2d 875, 879 (D.C.Cir.1977).

{¶ 29} Accordingly, I would find that the trial court did not err in either evaluating the veracity of the witness Brown or in its conclusion that the state had not met its burden in proving

that Sgt. Gay possessed reasonable suspicion when he performed a stop on Cutright's white van.

I would overrule the state's sole assignment of error and affirm the judgment of the trial court.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS REVERSED AND CAUSE REMANDED. Appellee shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & McFarland, A.J.: Concur in Judgment and Opinion.
Hoover, P.J.: Dissents with Dissenting Opinion.

FOR THE COURT:

By:    _____
       William H. Harsha, Judge


By:    _____
       Matthew W. McFarland, Administrative Judge


By:    _____
       Marie Hoover, Presiding Judge


## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.